UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEW LIFE EVANGELISTIC CENTER, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00395-JAR |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on Movants Brad A. Waldrop ("Waldrop"), Neighbors of NLEC, LLC ("NNI"), 1426 Washington Ave. LLC, and 1401 Locust Street, LLC's[1] Motion to Intervene (Doc. 12). The Motion is fully briefed and ready for disposition. For the following reasons, the Movants' Motion will be **DENIED without prejudice.**

### I. Background

Plaintiff New Life Evangelistic Center, Inc. ("New Life") is an interdenominational Christion church and Missouri non-profit corporation that operates a homeless shelter in its facility located at 1411 Locust Street in Saint Louis City (hereinafter the "Facility") (*Id.* at ¶¶6, 12, 14, 19, 24) According to New Life, the Facility houses on average between 225 and 250 individuals per night and, on a cold night, this number may be as high as 300 individuals (*Id.* at ¶22).

On March 16, 1976, the City of St. Louis, Missouri ("the City") issued New Life hotel permit No. 84777 (the "Permit"), which allows New Life to provide 32 beds at the Facility (*Id.* at

---

[1] The Court will refer to Movants 1426 Washington Ave. LLC and 1404 Locust Street, LLC collectively as the "Property Movants."

¶¶17, 18; Doc. 1-7). On April 26, 2013, a petition was submitted to the City's Board of Public Service ("the Board") seeking a hearing before the Board to have the Facility declared a "detriment to the neighborhood" pursuant to Chapter 11.72.010 of the St. Louis City Revised Code (Doc. 1 at ¶55). Pursuant to Chapter 11.72, the Board has the authority to revoke a hotel permit if the hotel in question constitutes a detriment to the neighborhood in which it is located (*Id.* at ¶57; Doc. 1-37). After confirming that the petition contained verified signatures, the Board held several hearings over the course of a six-month period (Doc. 1 at ¶¶61, 62, 63). On December 23, 2014, the Board voted to declare the homeless shelter a detriment to the neighborhood and to revoke New Life's Permit effective May 12, 2015 unless on or before that date New Life provided documentation that it is in compliance with the 32-bed requirement for at least 30 days or New Life provides documentation to the Board demonstrating that it has obtained the necessary permit and/or license to operate its facility (*Id.* at ¶¶67-70). The Board thereafter issued an order memorializing its decision (Doc. 1-37).

On March 3, 2015, New Life filed this action against the City for declaratory relief, injunctive relief, and damages pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc et seq., the First and Fourteenth Amendments to the United States Constitution, the Missouri Religious Freedom Restoration Act, Mo. Rev. Stat. Sec. 1.302, and the Missouri Constitution. New Life specifically requests the following relevant relief: that the Court (1) declare the decision by the City to require it to possess a hotel permit in order to run its homeless shelter to be violation of these laws; (2) further declare that New Life is permitted as of right to use the Facility as a religious organization for all of its intended and stated purposes; (3) permanently enjoin the City from denying New Life the right to use the Facility as an overnight shelter for the homeless; and (4) preliminarily and permanently enjoin

the City from enforcing its Revised Code, Building Code, or any other code to prevent New Life from using a portion of the Facility as a homeless shelter (Doc. 1 at 24-25). New Life accordingly filed a Motion for Preliminary Injunction concurrently with its Complaint (Doc. 3) and, on March 16, 2015, New Life moved for a temporary restraining order ("TRO"). In its Motion for TRO, New Life requests that the Court enjoin the City from enforcing the decision of the Board to either revoke its Permit or force it to drastically reduce the number of homeless persons it serves (Doc. 9). The hearing on the Motion for TRO is currently scheduled for April 9, 2015 at 1:30 p.m.

On March 20, 2015, Movants Waldrop, NNI, 1426 Washington Ave. LLC, and 1401 Locust Street, LLC filed a Motion to Intervene requesting, pursuant to Federal Rule of Civil Procedure 24(a)(2), that this Court grant them leave to intervene as Defendants in this action, as a matter of right or, alternatively, pursuant to Federal Rule of Civil Procedure 24(b)(2), that this Court grant them leave to intervene as Defendants in this action permissively (Doc. 12). Movants generally assert that they have a compelling interest in the outcome of this action and in preserving the viability and enforceability of the Board's decision because they have valid concerns about public safety in the vicinity of the New Life Facility and the very livability of that neighborhood (Doc. 13 at ¶13). The Property Movants additionally assert an interest because "they have commercial operations in the immediate vicinity of the [New Life] Facility that have suffered economically" (Doc. 13 at ¶7).

## II. Analysis

Federal Rule of Civil Procedure 24 governs whether a movant may intervene. FED. R. CIV. P. 24(a), (b). In this Circuit, potential intervenors must establish Article III standing in addition to the requirements of Rule 24. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d

3

829, 834 (8th Cir. 2009). *See also Solliday v. Dir. of Bureau of Prisions,* No. 11-CV-2350 MJD/JJG, 2014 WL 6388568, at *3 (D. Minn. Nov. 14, 2014) ("[A]lthough the Eighth Circuit has not ruled on whether standing is a prerequisite to permissive intervention under Rule 24(b), . . . most courts in this District have required it.") (internal citation omitted) The Circuit further directs the Court to "address questions of standing before addressing the merits of a case where standing is called into question" as is the case here. *Brown v. Medtronic, Inc.,* 628 F.3d 451, 455 (8th Cir. 2010).

"Constitutional standing requires a showing of: (1) an injury in fact . . .; (2) causation; and (3) redressability." *Curry v. Regents of Univ. of Minnesota,* 167 F.3d 420, 422 (8th Cir. 1999). An injury-in-fact is "an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent." *Id.* The requirement of imminence insures that the injury is not too speculative and is impending. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n.2 (1992). The Movants must also establish "a causal connection between the injury and the conduct complained of, in other words, the intervenor's alleged injury must be fairly traceable to the [opposing party's] conduct." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.,* 759 F.3d 969, 974-75 (8th Cir. 2014) (internal quotations and citations omitted). Finally, the Movants "must establish that a favorable decision will likely redress the injury." *Id.* (internal quotation omitted).

**1. The Property Movants**

The Property Movants are the owners of two buildings neighboring the New Life Facility. 1426 Washington Ave., LLC is a limited liability company that owns the commercial realty at 1426 Washington Ave., St. Louis, Missouri commonly referred to as the "Monkey Building." The Monkey Building is located immediately north of the New Life Facility and shares an alley with it (Doc. 13 at ¶4). 1401 Locust Street, LLC is a limited liability company

4

that owns a commercial parking lot that is immediately east of the New Life Facility. The parking lot and the New Life Facility share a property line (*Id.* at ¶5). The Property Movants assert that they have "suffered economically" as a result of New Life's "stockpiling of a massive homeless population that is then cast out onto the streets early each morning" (*Id.* at ¶7).

Allegations of economic harm may establish Article III standing. *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (finding a risk of direct financial harm establishes injury in fact required for Article III standing). However, general economic interests are not protectable nor are interests that are too remote from the subject matter of the proceeding. *Metro. St. Louis Sewer Dist.*, 569 F.3d at 836; *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998). Here, the Property Movants fail to specifically state how they have suffered economically or how their economic loss relates to the present action. Accordingly, the Court finds the Property Movants have not sufficiently alleged an economic harm to establish Article III standing.

### 2. Brad A. Waldrop

Waldrop, president and a member of the Board of Directors of the NNI, resides in St. Louis County (Doc. 13 at ¶1, 2). In addition to his role at NNI, Waldrop is the primary asset and property manager for the Movant properties 1426 Washington Ave., LLC and 1401 Locust Street, LLC (*Id.* at ¶3). Furthermore, Waldrop has been very involved in the community effort before the Board (*See Id.* at ¶6). However, Waldrop does not allege any economic or other legally protected interest that would be harmed by an unfavorable outcome in this litigation. Accordingly, the Court finds Waldrop's allegations insufficient to establish Article III standing.

### 3. Neighbors of NLEC, Inc. (NNI)

5

NNI is a not-for-profit corporation formed on May 22, 2012 with the stated purpose to "provide strategic guidance and financial assistance to a neighborhood movement which is exercising its right to petition a business in the area which is generally considered to be a detriment to the neighborhood" (*Id.* at ¶2) Movants assert that the referenced "business" is New Life and the "neighborhood" is Saint Louis City (*Id.*). NNI asserts an interest in the Board's decision because the New Life Facility, as currently operated, is a detriment to the health, safety and welfare of its neighbors (*Id.* at ¶7).

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members," *Warth v. Seldin*, 422 U.S. 490, 511 (1975), "if 'the interests it seeks to protect are germane to the organization's purpose.'" *Metro. St. Louis Sewer Dist.*, 569 F.3d at 834 (quoting *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Here, both NNI's asserted interest and its stated purpose address the "detriment" of the operation of the Facility to the neighborhood. The result of this litigation "necessarily bears directly on the neighbors' property interests" considering the factors used by the Board to analyze whether New Life was detrimental to the neighborhood[2]. *Planned Parenthood of Minnesota, Inc. v. Citizens*

---

[2] The Board weighed the following factors in its order finding the New Life Facility detrimental to the neighborhood:

> 1. The character of the neighborhood in which the premises is located, with particular consideration being given to the proximity of the premises to parks, churches, schools, playgrounds, residences and hospitals;
>
> 2. Loitering in the immediate vicinity of the premises by persons frequenting the premises;
>
> 3. Littering committed by persons frequenting the premises or by the permit holder, his agents, servants or employees;
>
> 4. Drinking in public by persons frequenting the premises;
>
> 5. Lewd and indecent conduct, including but not limited to public urination, exhibited by persons frequenting the premises or by permit holder, his employees, servants or agents, whether such behavior occurs on the premises or in the immediate vicinity thereof;
>
> 6. Commission of crimes upon or in the immediate vicinity of a premises by persons frequenting the premises or by the permit holder, his employees, servants or agents;

*for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977). However, NNI fails to identify its membership, if any, how this membership's interest relates to NNI's purpose, or how NNI's interest is impacted by this litigation. Therefore, NNI has failed to sufficiently establish that it has Article III standing.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Movants Brad A. Waldrop, Neighbors of NLEC, LLC, 1426 Washington Ave. LLC, and 1401 Locust Street, LLC's Motion to Intervene (Doc. 12) is **DENIED without prejudice.**

Dated this 8th day of April, 2015.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

---

7. Sale or use of illegal drugs upon or in the immediate vicinity of the premises by persons frequenting the premises or by the permit holder, his employees, servants or agents;

8. Harassing or intimidating behavior exhibited by persons frequenting or congregating about the premises toward persons living in the neighborhood in which the premises is located or toward persons passing by the premises;

9. Noise associated with the operation of the premises or caused by persons frequenting the premises;

10. Street and sidewalk congestion associated with operation of the premises;

11. Existence of proper lighting and appropriate parking facilities, or the lack thereof;

12. Other facilities, which, due to the character of the neighborhood or of the premises, would be relevant to the determination of whether continuation of a permit would be detrimental to the neighborhood in which the premises is located.

(Doc. 9-35 (citing ST. LOUIS, MO., REVISED CODE § 11.72.050)).

7