IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NEW LIFE EVANGELISTIC CENTER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 4:15-CV-00395-JAR |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT CITY OF ST. LOUIS' FIRST MOTION IN LIMINE
TO EXCLUDE EVIDENCE AND FOR EXPEDITED ORDER**

COMES NOW Defendant City of St. Louis ("City"), by and through counsel, and for its First Motion in Limine to Exclude Evidence and for Expedited Order states as follows:

**I.     Summary of Motion's Basis**

The purpose of this Motion is to establish whether Plaintiff New Life Evangelistic Center ("NLEC") will be allowed to re-litigate facts and issues previously determined in administrative nuisance proceedings conducted by the City's Board of Public Service ("BPS").  Based on the plaintiff's various pleadings, discovery submissions and verbal representations, it is apparent that it wishes to re-litigate the decisions and findings resulting from the BPS administrative proceedings. Defendant City maintains that plaintiff NLEC is estopped and precluded from re-litigating the BPS issues in this action because BPS already considered the evidence and rendered its decision, NLEC did not exercise is right to appeal in state court, and the BPS decision is now final.

The City respectfully requests an expedited ruling on this Motion in order to allow the parties sufficient time to prepare for trial.  Trial is scheduled six weeks after the date of the filing of this Motion.  The testimony and evidence presented at the BPS proceeding was voluminous,

extending over nine days, with dozens of witnesses and 127 exhibits.  This Motion is presented at this time because re-litigation of the facts and issues decided by BPS will require a substantial amount of time and effort in preparation for trial.

**II.     Background**

NLEC operates a homeless shelter at 1411 Locust Street in the City (the "Property"). *Doc. 97, First Am. Complaint*, ¶¶ 14, 19.  NLEC allows 225 to 300 people in its shelter each night, most of whom are required to exit onto City streets each morning at 6:45 a.m.  *First Am. Complaint*, ¶¶ 14, 19, 38.

The St. Louis City Revised Code ("City Code") provides a procedure whereby residents or property owners in a neighborhood may petition the BPS to declare a rooming house, boarding house, dormitory or hotel to be declared "a detriment to the neighborhood." *First Am. Complaint*, ¶ 58; *First Am. Complaint Exhibit* 26.  In April 2013, a majority of the property owners in NLEC's neighborhood submitted a petition to BPS seeking a hearing before the board to have NLEC's shelter declared a "detriment to the neighborhood" pursuant to Section 11.72.010 of the City Code.  *First Am. Complaint*, ¶ 56, *First Am. Complaint Exhibit 25*; *Doc. 9-2, Plaintiff's Statement of Uncontroverted Material Facts*, ¶ 25.[1]  If such a finding is made, the facility's occupancy permit may be suspended or revoked. *First Am. Complaint Exhibit* 26 (§§ 11.72.010, 11.72.060-070).  At the time the neighbors initiated the nuisance proceeding, the only occupancy permit that allowed NLEC to operate its homeless shelter was a hotel permit it obtained from the City in 1976.  *First Am. Complaint Exhibit 32* (BPS Order, pp. 31-32); *First Am Complaint*, ¶ ¶18, 77; *First Am. Complaint Exhibit  4* (1976 hotel permit).  NLEC's existing

---

[1] Filed by plaintiff on March 16, 2015, in support of plaintiff's motion for temporary restraining order.

hotel permit provides for a 32-bed occupancy limit. *First Am. Complaint*, ¶ 76; *First Am. Complaint Exhibit 32* (BPS Order, pp. 34-35); *First Am. Complaint Exhibit 4* (1976 hotel permit). Yet, as noted above, NLEC houses as many as 300 individuals per night at the Property. *First Am. Complaint*, at ¶ 22.

BPS conducted a public hearing on the neighboring property owners' petition under City Code § 11.72.040. *First Am. Complaint, ¶¶ 62-63.* The City's BPS acted as a neutral, impartial fact finder in the proceedings, which were conducted pursuant to pursuant to the Missouri Administrative Procedure Act, MO. REV. STAT. § 536.010, *et seq*. *First Am. Complaint Exhibit 26* (City Code, § 11.74.040); *First Am. Complaint Exhibit 32* (BPS Order, p. 36). *See also Begshaw v. City of Independence*, 41 S.W.3d 500, 503 (Mo.App. 2000) (enforcement of ordinances by a municipality is administrative and should be reviewed under Chapter 536 of Missouri statutes). BPS conducted at least nine evidentiary hearings, in which extensive testimony and documentary evidence was adduced. *First Am. Complaint, ¶ 64*, *First Am. Complaint Exhibit 32* (BPS Order, p. 1-3). Both NLEC and the property owners submitted extensive witness testimony, documentary evidence, arguments and written briefing on the matter. *First Am. Complaint, ¶ 63*; *First Am. Complaint Exhibit 32* (BPS Order, p. 1).

On December 23, 2014, BPS voted 5-0 to allow NLEC a grace period of almost five months – until May 12, 2015 – in which to either comply with the 32-bed occupancy limit as stated in its existing hotel permit or to apply for a new permit for its shelter. *First Am. Complaint, ¶ 70; First Am. Complaint Exhibit 32*, BPS Order, p. 34-35. That decision was contained in detailed findings of fact and conclusions of law subsequently issued by BPS in a 36-page decision ("BPS Order"), finding NLEC's operation to be detrimental to its neighborhood

and providing NLEC two options in lieu of having its hotel permit revoked. *First Am. Complaint Exhibit 32*, BPS Order, pp. 30, 34-35.

Missouri law afforded NLEC the right to obtain judicial review of the BPS order in state court, without any limitation of the legal arguments that NLEC could assert. MO. REV. STAT. §§ 536.140.2(1), (4). State court review of legal issues raised with respect to administrative proceedings is *de novo*. MO. REV. STAT. § 536.140.3. NLEC did not seek judicial review of any the BPS findings of fact or conclusions of law in state court, and the BPS Order is therefore a final decision, as NLEC acknowledges. *Plaintiff's Response in Opposition to Defendant's Motion to Join Required Party* (Doc. 41, p. 9).

### III. Collateral estoppel bars NLEC from adducing evidence or argument at trial that controverts, challenges or attempts to re-litigate the BPS's finding that NLEC's operation is a nuisance and that it must comply with City permitting procedures.

There is no dispute that NLEC was entitled to judicial review of the BPS Order in state court. *First Am. Complaint Exhibit 32*, BPS Order, p. 36. As described above, NLEC made a conscious decision to forgo its state court right to appeal the BPS determination that NLEC is a nuisance, a detriment to its neighborhood and that NLEC's hotel license would be revoked if it failed to comply with City permitting requirements.[2] *Plaintiff's Response in Opposition to*

---

[2] An appeal of a decision rendered in an administrative proceeding, or "contested case" governed by the Administrative Procedure Act, is styled as a "petition for judicial review." MO. REV. STAT. § 536.100. At the conclusion of any an administrative proceeding an aggrieved party has the right to petition the circuit court for judicial review. MO. REV. STAT. § 536.110.1. *See also* MO. REV. STAT. § 536.100.

4

*Defendant's Motion to Join Required Party (*Doc. 41, p. 9) (affirmatively stating that NLEC decided against appealing the BPS decision in state court and acknowledging that the BPS Order is "final"). Nor is it disputed that NLEC could have asserted any constitutional claims or other legal claims that it wished to raise in a state court appeal. MO. REV. STAT. §§ 536.140.2(1). By not appealing, NLEC waived its right to challenge the factual and legal determinations contained in the BPS Order.

When an administrative agency acting in a judicial capacity resolves disputed issues of fact properly before it, and which the parties have had an adequate opportunity to litigate, federal courts must give the state agency's findings the same preclusive effect to which it would be entitled in the State's courts. *University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1986). Therefore, Missouri law determines the preclusive effect given to the BPS Order. *Simmons v. O'Brien*, 77 F.3d 1093, 1096 (8th Cir. 1996). Missouri courts give collateral estoppel effect to the unappealed, final decisions of administrative agencies, so long as the general criteria for applying collateral estoppel are satisfied. *See Bresnahan v. May Dept. Stores Co.,* 726 S.W.2d 327, 329–30 (Mo. banc 1987). Issue preclusion will apply when: (1) the issue in the present action is identical to the issue decided in the prior adjudication; (2) the prior adjudication resulted in judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Irving v. Dormire*, 586 F.3d 645, 647-48 (8th Cir. 2009); *State ex rel. Haley v. Groose,* 873 S.W.2d 221, 223 (Mo. banc 1994).

The BPS proceedings and Order satisfy the criteria described in *Haley*. The issues addressed by BPS were specified within the terms of Chapter 11.72.[3] The BPS Order made item-by-item findings for each factor specified in the Code for making the "detriment to the neighborhood" determination. The Chapter 11.72 nuisance procedure specifically deals with hotel licenses. *First Am. Complaint, ¶ 58; First Am. Complaint Exhibit 26.* The only occupancy permit that NLEC possesses for its shelter is its 1976 hotel permit. *First Am. Complaint Exhibit 32* (BPS Order, pp. 31-32); *First Am. Complaint, ¶ 77.* This Motion seeks to preclude evidence, testimony and argument relating to whether NLEC's shelter is a detriment to its neighborhood, which are identical to the issues considered in the BPS proceeding and decided in the BPS Order, thus satisfying the first *Haley* requirement.

---

[3] The factors are contained in Section 11.72.050 of the City Code. *First Am. Complaint Exhibit 26.* The first consideration is the character of the neighborhood in which the premises is located, with particular consideration being given to the proximity of the premises to parks, churches, schools, playgrounds, residences and hospitals. The next 11 factors address the conduct of individuals conduct that occurs near the subject premises, by persons frequenting the premises: (1) loitering; (2) littering; (3) drinking in public; (4) lewd and indecent conduct, including but not limited to public urination; (5) commission of crimes; (6) sale or use of illegal drugs; (7) harassing or intimidating behavior frequenting or congregating about the premises toward persons living in the neighborhood; (8) noise; (9) street and sidewalk congestion associated with operation of the premises; (10) proper lighting and appropriate parking facilities; and (11) other facilities, which, due to the character of the neighborhood or of the premises, would be relevant to the determination of whether continuation of a permit would be detrimental to the neighborhood. *Id.*

6

Second, the 36-page BPS Order is, on its face, a judgment on the merits. *See Johnson v. Missouri Dept. of Health & Senior Services,* 174 S.W.3d 568, 585 (Mo.App.W.D. 2005), *as modified* (Oct. 4, 2005) ("judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial"). It contains detailed findings of fact, conclusions of law, and the Board's ultimate decision based on those findings as required by state law. MO. REV. STAT. § 536.090.

Third, NLEC acknowledges (and complains) that it was required to be a party to the BPS proceeding, so there is no dispute that NLEC was a party to the BPS proceeding and is a party to the instant action.

NLEC's allegations also confirm that it had a full and fair opportunity to litigate the issues in the BPS proceedings and in state court. BPS acted in a judicial capacity pursuant to the Missouri Administrative Procedure Act, MO. REV. STAT. § 536.010, et *seq.*, and the City Code, Chapter 11.72. *First Am. Complaint Exhibit 26*. NLEC does not allege any improprieties in the BPS administrative hearing. Its allegations indicate the opposite – NLEC was represented by an attorney and submitted "extensive witness testimony, documentary evidence, arguments and written briefing" to BPS. *First Am. Complaint, ¶¶ 63-64*; *First Am. Complaint Exhibit 32* (BPS Order, p. 1). BPS conducted at least nine evidentiary hearings, in which testimony and documentary evidence was adduced. *First Am. Complaint, ¶ 64*, *First Am. Complaint Exhibit 32* (BPS Order, p. 1-3). NLEC does not allege that it was prevented from presenting any evidence or asserting any legal claims in the BPS proceeding. Nor does NLEC allege that Missouri state court was somehow an inadequate forum for its claims. State law allowed NLEC to assert any and all legal claims on review in state court, thus providing an avenue for NLEC to appeal the

7

BPS Order and raise whatever legal claims it wished.  MO. REV. STAT. §§ 536.140.2(1), (4).[4]  It is clear from plaintiff's allegations that it had ample and adequate opportunity to litigate the issues in the BPS proceeding and on appeal, the final *Haley* requirement.

Issue preclusion is rooted in concerns of judicial economy. *Simmons,* 77 F.3d at 1095.  "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, issue preclusion acts to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " *Id., quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Knutson v. City of Fargo,* 600 F.3d 992, 996 (8th Cir. 2010).  The issues addressed in this Motion are identical to the issues decided in the BPS proceeding.  Issue preclusion bars plaintiff from re-litigating or rearguing the detailed findings and conclusions already made by BPS.  Where, as here, an unappealed administrative decision is at issue, "[c]ollateral estoppel precludes the reexamination of previously litigated issues of *fact or law*, even if the prior judgment was erroneous. *Ballinger v. Gascosage Elec. Co-op.*, 788 S.W.2d 506, 515 (Mo.banc 1990)(emphasis added), *overruled on other grounds*, *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 390 (Mo.banc 1991).  See also, *Lockridge v. Americall Group, Inc.*, 193 S.W.3d 836, 838 (Mo.App.E.D.

---

[4] As noted above, NLEC acknowledges that it chose not to exercise its state court appeal rights.  NLEC's decision not to appeal the BPS decision does not affect the collateral estoppel analysis. *Irving*, 586 F.3d at 649 ("the party must have the opportunity to litigate the issue; issue preclusion will apply even if the party does not take advantage of that opportunity"); *Bresnahan*, 726 S.W.2d at 330.

2006)(holding that state commission's finding of unemployment compensation claimant's misconduct and disqualification from receiving benefits became final and conclusive and could not be re-litigated where claimant failed to appeal and exhaust his administrative remedies).

**IV.    Res judicata bars NLEC from presenting evidence or argument at trial that controverts, challenges or attempts to re-litigate the BPS's finding that NLEC's hotel permit was subject to the hotel permit nuisance provisions of City Code Chapter 11.72.**

Res judicata, or claim preclusion, precludes a party from litigating a claim against another party that has already been litigated. *S.M.B. by W.K.B. v. A.T.W.,* 810 S.W.2d 601, 604 (Mo.App. 1991); *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.,* 70 F.3d 512, 517 (8th Cir.1995). Federal district courts are bound to give decisions of administrative agencies the same preclusive effect as state courts would. *Plough By & Through Plough,* 70 F.3d at 517. "This is especially true regarding the preclusive effect of claims…based on 42 U.S.C. § 1983 and involving the same subject matter as the prior proceeding." *Id*. In Missouri, "[a] judgment on the merits, including an adjudication by an administrative agency, precludes relitigation of a claim or issue by one in privity with a party in a prior proceeding." *Jones v. Dir. of Revenue*, 981 S.W.2d 571, 575 (Mo. 1998).

Res judicata bars plaintiff from re-litigating claims surrounding the BPS decision that NLEC's hotel permit must be revoked if it fails to comply with the permit conditions. "Res judicata applies 'not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.'" *State ex rel. Sanders v. Martin*, 945 S.W.2d

9

641, 642 (Mo.App.E.D. 1997).  It bars a claim if the requisite elements are satisfied: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons or parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." *Id.*

The first factor focuses on the relief sought. *See Palmore v. City of Pacific,* 393 S.W.3d 657, 666 (Mo.App.E.D. 2013). In both the current proceeding and the BPS proceeding, the remedy sought by NLEC was to avoid revocation of its hotel permit and a determination that it is not subject to permit requirements. In the BPS proceeding, owners of property in NLEC's vicinity sought revocation of NLEC's hotel permit utilizing procedures set forth in Chapter 11.72 of the City Code.  The property owners asserted that NLEC's operations were a detriment to the neighborhood based on the criteria established in the Code.  In opposing the property owners, NLEC argued that its hotel permit was not subject to revocation as a result of a Chapter 11.72 nuisance proceeding because NLEC's actual operations are not hotel operations.  NLEC makes the same claims in this case.

BPS made specific findings of fact and conclusions of law rejecting NLEC's claims. *First Am. Complaint Exhibit* 32 (BPS Order, pp. 31-34).   BPS rejected NLEC's argument based on the simple premise that without its hotel permit, NLEC lacked any permit whatsoever to operate its shelter:

> NLEC offers no evidence as to how it would be operational at this location without the hotel permit.  The reality is that NLEC is operational at its current location pursuant to hotel permit #84777, and is only operational at this location due to this permit.  And it follows that since this is true, Petitioners have the right to proceed against this premises under the hotel detriment law, Chapter 11.72. *First Amended Complaint Exhibit 32* (BPS Order, p. 32).

10

> Chapter 11.72 is a neutral and generally applicable law that governs all hotel permits in the City of St. Louis and that is necessary to protect public health and safety and to promote the general welfare. Having chosen to apply for and operate under a hotel permit, NLEC must comply with the laws that govern hotel permits, including Chapter 11.72. *First Amended Complaint Exhibit 32* (BPS Order, p. 34).

The BPS decision directly addresses the issue of the applicability of Chapter 11.72 to NLEC's hotel permit.

Second, identity of the cause of action refers to "the underlying facts combined with the law, giving a party a *right* to a remedy of one form or another based thereon." *Id.* (emphasis in original). In the present case, NLEC attempts to re-litigate and assert the same facts, claims, and remedies it presented in the BPS proceeding. Plaintiff attempts to re-litigate the defense rejected by BPS that NLEC is a church and therefore application of Chapter 11.72 was an unlawful deprivation of religious freedom. *First Am. Complaint Exhibit 32.* In both the BPS proceeding and Count VII of the instant case, plaintiff asserts that the City cannot force NLEC to comply with the 32-bed limit or revoke the hotel permit. *First Am. Complaint Exhibit 32.*

The third factor is satisfied because the parties to the present action are exactly the same as the parties in the BPS proceeding. In the BPS proceeding, the neighbors brought forth the petition for revocation, NLEC defended itself, and BPS adjudicated the matter. All of these parties are present in the current proceeding. Fourth, NLEC was clearly a party to both proceedings, attempting to preserve its hotel permit in both.

WHEREFORE, in order to allow the parties to efficiently prepare for trial and because collateral estoppel and res judicata bars NLEC from re-litigating issues and claims decided in the

BPS proceedings, the City respectfully requests that this Court expedite consideration and ruling on this Motion, and that the Court order the following:

a. Plaintiff may not offer any evidence, testimony or argument during voir dire, opening argument, direct examination, cross-examination, closing argument, or at any other time during trial to challenge, contest or rebut the BPS finding that NLEC's operation is a nuisance and a detriment to its neighborhood.

b. Plaintiff may not offer any evidence, testimony or argument during voir dire, opening argument, direct examination, cross-examination, closing argument, or at any other time during trial designed to re-litigate any of the findings of fact made by the BPS, including but not limited to those listed on pp. 13-29 of the BPS Order.  *First Am. Complaint, Exhibit 32*.

c. Plaintiff may not offer any evidence, testimony or argument during voir dire, opening argument, direct examination, cross-examination, closing argument, or at any other time during trial to challenge, contest or rebut the BPS finding that NLEC's hotel permit shall be revoked unless it complies with one of the City permitting requirements identified in the "Decision and Order" section of the BPS Order, pp. 34-35.

d. The findings of fact and conclusion of law in the BPS Order are deemed to be conclusive and established for purposes of trial and that the trial shall be conducted on that basis.

Respectfully submitted,

WINSTON CALVERT
CITY COUNSELOR

/s/ Erin K. McGowan
Michael A. Garvin, #39817 MO
Christine L. Hodzic, #58257 MO
Erin K. McGowan, #64020 MO
1200 Market Street, Room 314
St. Louis, MO 63103
Phone: (314) 622-3361
Fax: (314) 622-4956
GarvinM@stlouis-mo.gov
HodzicC@stlouis-mo.gov
McGowanE@stlouis-mo.gov

Attorneys for Defendant City of St. Louis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 11, 2015 a true copy of the foregoing Motion was filed with the Clerk of the Court using the CM/ECF system to be served by operation of the Court's electronic filing system to all attorneys of record.

/s/ Erin K. McGowan