UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NEW LIFE EVANGELISTIC CENTER, INC., )
)
)
**Plaintiff,** )
)
v. ) Case No. 4:15-cv-00395-JAR
)
CITY OF ST. LOUIS, MISSOURI, )
)
)
**Defendant.** )

## MEMORANDUM AND ORDER

This case is before the Court on a number of pending motions (Docs. 100, 102, 105, 106, 108, 109, 111, 115, 116, 119). The motions are fully briefed and ready for disposition. Upon review of the briefing, the documents attached to them, and the representations of counsel during oral argument, the Court finds Plaintiff's RLUIPA, section 1983, and declaratory judgment claims are not ripe for adjudication. A federal court has an obligation to assure itself of its own jurisdiction and cannot exercise authority over a claim that is not ripe. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *Int'l Ass'n of Fire Fighters v. City of Clayton*, 320 F.3d 849, 850 (8th Cir. 2003). Because the Court finds the federal law claims are not ripe for adjudication, the Court declines to assert supplemental jurisdiction over the state law claims and **DISMISSES** this case **without prejudice.**

### I. Background

Plaintiff New Life Evangelistic Center, Inc. ("New Life") is an interdenominational Christian church and Missouri non-profit corporation that operates, among other things, a homeless shelter in its facility located at 1411 Locust Street in Saint Louis City (hereinafter the

"Facility" or "NLEC") (Doc. 97 at ¶¶2, 6). According to New Life, the Facility houses on average between 225 and 250 individuals per night and, on a cold night, this number may be as high as 300 individuals (*Id.* at ¶22).

On March 16, 1976, the City issued New Life hotel permit No. 84777 (the "Permit"), which allows New Life to provide 32 beds at the Facility (*Id.* at ¶18). On April 26, 2013, a petition was submitted to the City's Board of Public Service (the "Board") seeking a hearing before the Board to have the Facility declared a "detriment to the neighborhood" pursuant to Chapter 11.72.010 of the St. Louis City Revised Code (*Id.* at ¶¶56, 57). Pursuant to Chapter 11.72, the Board has the authority to revoke a hotel permit if the hotel in question constitutes a detriment to the neighborhood in which it is located (*Id.* at ¶58). After confirming that the petition contained verified signatures, the Board held several hearings over the course of a six-month period (*Id.* at ¶¶62-64). On December 23, 2014, the Board voted to declare the Facility a detriment to the neighborhood and to revoke New Life's Permit effective May 12, 2015, unless on or before that date New Life provided documentation that it was in compliance with the hotel permit's 32-bed requirement for at least 30 days or that it had obtained the necessary permit and/or license to operate its facility (*Id.* at ¶¶68-71). The Board thereafter issued an order memorializing its decision (*Id.* at ¶¶72, 73, 75-77; Exhibit 32 (hereinafter "the Order")). New Life did not file an appeal of the Board's decision (Doc. 41 at 9).

On March 3, 2015, New Life filed this action against the City for declaratory relief, injunctive relief, and damages pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq., the First and Fourteenth Amendments to the United States Constitution, the Missouri Religious Freedom Restoration Act (RFRA), MO. REV. STAT. § 1.302, and the Missouri Constitution (Doc. 1). New Life concurrently filed a Motion for Preliminary Injunction (Doc. 3). Thereafter, on March 16, 2015, New Life moved for a

temporary restraining order ("TRO"). In its Motion for TRO, New Life requested that the Court enjoin the City from enforcing the decision of the Board to either revoke its Permit or force it to drastically reduce the number of homeless persons it serves (Doc. 9). On April 8, 2015, the Court entered an Agreed Temporary Restraining Order enjoining the City from revoking New Life's hotel permit until October 15, 2015, or until this Court specifically orders otherwise (Doc. 27). On May 19, 2015, 1426 Washington Ave. LLC, and 1401 Locust Street, LLC ("the Property Intervenors"), two neighboring property owners, were allowed to intervene (Doc. 52).

On July 17, 2015, the Court permitted New Life to file an amended complaint. In its Amended Complaint, New Life asserts the following eight claims:

- Count I: Violation of the Religious Land Use and Institutionalized Person Act – Substantial Burden Claim (42 U.S.C. § 2000cc(a)).
- Count II: Violation of the Rights to Freedom of Assembly and Speech as Guaranteed by the First Amendment to the United States Constitution (42 U.S.C. § 1983).
- Count III: Violation of the Right to Free Exercise of Religion Guaranteed by the First Amendment to the United States Constitution (42 USC § 1983).
- Count IV: Violation of the Right to Free Speech Guaranteed by Article I, Section 8 of the Missouri Constitution.
- Count V: Violation of the Right to Free Exercise of Religion Guaranteed by Article I, Section 5 of the Missouri Constitution.
- Count VI: Violation of the Right to Freedom of Association Guaranteed by Article I, Section 9 of the Missouri Constitution.
- Count VII: Declaratory Judgment as to New Life's Continued Operations (28 U.S.C. § 2201).
- Count VIII: Violation of Religious Land Use and Institutionalized Person Act – Equal Terms Provision (42 U.S.C. § 2000cc(b)(1)).

(Doc. 97). New Life requests the Court (1) declare – (a) New Life is not required to have a hotel permit or hotel license to operate and to provide services and overnight shelter to the homeless population, (b) the City may not take steps to stop New Life from operating as a church or from providing services and overnight shelter to the homeless population on the basis that New Life's hotel permit has been revoked or that New Life is exceeding its 32-bed limit, and (c) the Board of Public Service's Order has no effect on New Life since Chapter 11.72 is not applicable to

3

homeless shelters; (2) further declare – (a) the decision by Defendant to require Plaintiff to comply with a hotel permit to use a portion of the Property as a homeless shelter in the City's Central Business District to be in violation of the Religious Land Use and Institutionalized Persons Act, the Free Speech, Right to Assemble, and Free Exercise Clauses of the First Amendment to the United States Constitution, the Missouri Religious Freedom Restoration Act, and parallel clauses of the Missouri Constitution, and (b) Plaintiff is permitted as of right to use the Property as a religious organization for all of its intended and stated purposes; (3) permanently enjoin the City from denying New Life the right to use the Facility as an overnight shelter for the homeless; and (4) preliminarily and permanently enjoin the City from enforcing its Revised Code, Building Code, or any other code to prevent New Life from using a portion of the Facility as a homeless shelter (*Id.* at 26-27).

Now before the Court are a number of pending motions including the City's Motion to Dismiss or for Judgment on the Pleadings on Counts I Through VI of the First Amended Complaint (Doc. 106). The Property Intervenors have joined in this Motion (Doc. 108) and New Life has responded (Doc. 126). In its response, New Life states that it applied for a new permit at the end of July (*Id.* at 7). In support of its assertion, New Life has attached a letter it submitted to Mr. Michael Garvin, attorney for the City, indicating that it should be considered as an application for a permit to use its entire building (Doc. 126-4 at 2). In its reply, the City supplied a copy of the new application dated July 29, 2015(Doc. 145-2).

On September 3, 2015, the Court held a hearing on all of the pending motions. During the hearing, both Parties indicated that New Life filed for a new permit. At the time, the Parties reported that the City had performed an occupancy inspection of the Facility and that New Life's architect met with the City Building Division the week prior to the hearing. New Life further reported that the meeting was productive. The City's counsel informed the Court that the next

step in the process would be for New Life to submit architectural drawings. Neither Party could definitively state how long the entire application process would take. The City indicated that the process is driven by the diligence of the applicant and complicated by the multiple uses in the building. Once New Life supplies all of the information to the City, counsel suggested it would take less than two weeks for the City to make an initial determination. Upon issuance of the initial determination, New Life could then seek administrative review of the Building Commissioner's decision which would take some additional time.

## II. Analysis

### A. Ripeness

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). The doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). A two-prong test has been delineated to determine the ripeness of a particular case, an evaluation of both (1) "the fitness of the issues for a judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Neb. Pub. Power Dist.*, 234 F.3d at 1038 (citations omitted).

### B. *Williamson County* Final Decision Requirement

In addition, many circuits apply the finality rule of *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) to certain RLUIPA claims and related § 1983 claims challenging the application of land use regulations to a given property. *See Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011), cert. denied, — – U.S. ——, 133 S.Ct. 423, 184 L.Ed.2d 255 (2012) ("All of the circuits to address this issue

5

have applied the final decision requirement to RLUIPA claims, as well as to related First Amendment-based § 1983 claims when they were presented, reasoning that the requirement of a final decision — either on a variance application, a special use permit application, or through a single appeal of a denied permit — served the purposes of the ripeness doctrine . . . .") (citations omitted); *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537-538 (6th Cir. 2010); *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 617-18 (6th Cir. 2008); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 351-352 (2d Cir. 2005) (applying *Williamson County* after making a two-part preliminary inquiry); *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 Fed. Appx. 214, 219 (3d Cir. 2009) (unpublished) (affirming dismissal of RLUIPA claim as unripe based upon *Williamson County*).

In *Williamson County*, the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. at 186. The Supreme Court further held that, when there was no evidence that the applicant had applied for a variance and the government entity had the power to grant variances, the applicant's takings claim was not ripe. *Id.* at 193-94. "[W]hether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment," the applicant's claim was premature because there would be no final decision regarding how the local government's regulations would be applied to the property until the applicant applied for a variance. *Id.* at 200. A final decision from the governmental entity is "a final, definitive position as to how [the plaintiff] could use the property from the entity charged with implementing the zoning regulations." *Murphy*, 402 F.3d at 348 (citing *Williamson Cnty.*, 473 U.S. at 186).

6

As the Second Circuit notes, the finality requirement is appropriate in land use cases because it (1) aids in the development of a full record, (2) provides a court with knowledge as to how a regulation will be applied to a particular parcel of land, (3) may obviate the need for judicial review if a variance is granted providing the requested relief, thereby supporting the principle that disputes should be decided on nonconstitutional grounds whenever possible, and (4) demonstrates the judiciary's appreciation that land use disputes are uniquely matters of local concern more appropriately suited for local resolution. *Murphy*, 402 F.3d at 348.

### 1. Preliminary Inquiry

Although the Ninth Circuit has chosen to apply *Williamson* without further inquiry[1], this Court will adopt the cautious approach of the Second and Sixth Circuits. *Guatay Christian Fellowship*, 670 F.3d at 980-981. In the Second and Sixth Circuits, a plaintiff may avoid application of *Williamson* if it meets a two-step "fact-sensitive [preliminary] inquiry": (1) whether the locality's action had inflicted an immediate injury on the plaintiff and (2) whether the existing record clearly defined the plaintiff's injury. *Murphy*, 402 F.3d at 350-351; *Miles Christi*, 629 F.3d at 541.

#### a. Immediate Injury

The Court finds that the Board's Order did not give rise to an immediate injury worthy of immediate judicial intervention. After determining that the Facility was a detriment to the neighborhood, the Board indicated it would revoke New Life's hotel permit unless New Life provided documentation (1) that it was in compliance with the hotel permit's 32-bed requirement for at least 30 days or (2) that it had obtained the necessary permit and/or license to operate its facility. The Order provided for a three-month grace period, from February 17, 2015, to May 12,

---

[1] The Third Circuit has also hinted that it may adopt this analysis. *See Congregation Anshei Roosevelt*, 338 F. App'x at 218 (unpublished).

2015, in which New Life could have attempted to conform to one of those two options. New Life could have also requested judicial review of the Board's Order in the state's circuit court and the Order would likely have been stayed pending the filing and final disposition of the proceeding for review. MO. REV. STAT. §§ 536.110.1, 536.120.1. Furthermore, at the hearing on September 3, 2015, Plaintiff's counsel indicated that Plaintiff would be inclined to stay the action pending the resolution of the July 29, 2015 application[2]. Therefore, any claim of immediate injury is suspect given the numerous options afforded New Life upon issuance of the Board's Order and Plaintiff's current willingness to stay the action in order to proceed with the new application.

### b. Record

The Court must next ask whether New Life's alleged injury is clearly defined on the existing record. This action presents the Court with a classic case of a land use challenge because there has been an ongoing process by which the relevant regulatory decisions have been and continue to be made. Specifically, the record reflects that New Life applied for a new permit on July 29, 2015, during the course of this litigation, and that the new application is currently pending before the City. There is not any indication on the record that the application has been fully processed or that New Life has received a denial. Therefore, although the Court has the benefit of the Board's Order and its findings of facts therein, these facts largely address the Board's conclusion that the Facility represents a detriment to the neighborhood. Furthermore, the Board's Order contemplated and invited a new permit application but did not, and could not, address New Life's current multi-use permit application or what potential variances would be afforded New Life. At this stage, it is unclear what facts and determinations will be made and

---

[2] Plaintiff's counsel also indicated during the hearing that he thought the best approach would be to have the application approved and then decide if Plaintiff is burdened by the new application.

8

how they would implicate any RLUIPA or section 1983 claims. Thus the Court finds that the existing record does not clearly define Plaintiff's alleged injury.

## C. Application of the *Williamson County* Finality Rule

Having determined that New Life should not be excused from the *Williamson County* finality rule, the Court now turns to the rule's application. The Parties do not dispute that New Life's July 29, 2015 multi-use permit application remains pending before the City. However, at various points during the course of this litigation, New Life has asserted that the filing of a new application would be futile. Specifically, New Life claims that it "has recorded conversations with city employees who state that it would take over four to six months for the permit process to go forward" (Doc. 126 at 6). New Life also asserts that it would be unable to submit the necessary petition containing the signatures of a majority of its neighbors in support of the permit (*Id.*). New Life further argues it would be unable to obtain a homeless shelter permit because the ordinances clearly state that a homeless shelter cannot be next to a school or a church and New Life is a church and the Facility is next to a school (*See also id.* at 5-6). At the hearing on September 3, 2015, Plaintiff's counsel indicated that the City had told him that it has the authority to issue exemptions but that New Life remains uncertain about whether the currently pending application has any chance of success.

Indeed, a plaintiff may avoid the final decision requirement of *Williamson* if an application for a permit "would be an exercise in futility." *S.D. Mining Ass'n, Inc. v. Lawrence Cnty.*, 155 F.3d 1005, 1009 (8th Cir. 1998). However, that is not the case here. While, "a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied," the City has the authority to issue variances and has repeatedly indicated a willingness to work with New Life to promptly address its application including any requests for variances. *Murphy*, 402

9

F.3d at 349 (citations omitted). *See also S.D. Mining Ass'n*, 155 F.3d at 1008-09 (holding that claim challenging ordinance banning new surface mining permits and amendments to existing permits was ripe because application for surface mining permit would be futile when the governmental entity had no power to grant surface mining permits to plaintiffs). Furthermore, even if New Life's arguments supported a finding of the futility exception, most courts hold that a plaintiff cannot invoke the exception until it has made at least one meaningful application for the permit or variance. *See, e.g., Guatay Christian Fellowship*, 670 F.3d at 982; *Murphy*, 402 F.3d at 353 n. 7; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 525 (6th Cir. 2004); *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991); *Unity Ventures v. Lake Cty.*, 841 F.2d 770, 775-76 (7th Cir. 1988). *See also Williamson Cnty.*, 473 U.S. at 190 ("[I]n the face of [the developer's] refusal to follow the procedures for requesting a variance" the developer had "not yet obtained a final decision regarding how it [would] be allowed to develop [the] property."). Therefore, because the City has the authority to grant variances, indicated a willingness to work with New Life, and New Life has not yet completed one meaningful application, the Court cannot find that such an application would be futile.

To the extent that New Life could potentially assert that the Board's Order constitutes a final decision, the Court finds this argument unpersuasive. As previously discussed, the Board's Order provided New Life with the option to comply with the 32-bed requirement of the hotel permit or obtain a new permit. Interestingly, the Parties agree the hotel permit is not even the proper permit.[3] The question before the Court is not whether New Life is currently violating the

---

[3] New Life has been able to continue to operate the Facility under the hotel permit as a result of the "grandfather" provisions in the City Code. *See* 25.32.480 ST. LOUIS CITY CODE § 905.1 ("All currently existing licensed rooming houses, boarding houses, dormitories and hotels shall, at a minimum, be governed by the provisions of the Building and Fire Code under which they were initially licensed."); 25.32.480 ST. LOUIS CITY CODE § 905.3 ("When a change of operation occurs altering the 'original' licensing and occupancy permit issued, such [as] an increase or decrease in the

10

terms of its hotel permit but whether New Life will or will not be granted a permit to use the property as it wishes moving forward. *Guatay Christian Fellowship*, 670 F.3d at 981. The Court cannot determine that the City has definitively barred New Life from using the building as it wishes until the City has evaluated a completed application and determined how it will apply its land use regulations to the Facility. *Id.*

Accordingly, the Court finds that the City has not made a final decision as to how New Life can use the Facility.

## D.  Hardship

Finally, the Court shall consider "the hardship to the parties[4] of withholding court consideration." *Neb. Pub. Power Dist.*, 234 F.3d at 1038 (citations omitted). Traditionally the hardship requirement is only met if the Plaintiff can show threat of an immediate injury. *See Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1358 (11th Cir. 2013). The hardship prong recognizes that a party need not wait until a threatened injury actually occurs, but requires examination of the immediacy and extent of the alleged threatened harm. *Neb. Pub. Power*, 234 F.3d at 1038. "Abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotations and citations omitted). The threatened "injury must be 'certainly

---

number of rooms, the applicant shall comply with all adopted codes necessary to achieve the public safety of its occupants.").

[4] Although the Property Intervenors technically have party status, the ripeness doctrine is designed, in part, " 'to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the *challenging* parties.' " *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (emphasis added) (quoting *Abbott Labs.*, 387 U.S. 136, 148-149). Further, any claim of hardship from the Property Intervenors would be insubstantial because the Property Intervenors are "not required to engage in, or to refrain from, any conduct" while judicial review is delayed. *Texas v. United States*, 523 U.S. 296, 301 (1998). However, the Court notes that all Parties concerned would be benefited by a speedy resolution of the current application.

11

impending.'" *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958-59 (8th Cir. 2001) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Because the Court has determined that New Life has not suffered an immediate injury, the Court is inclined to also find that New Life would not suffer hardship. As previously discussed, at the time New Life filed this litigation, it had several options before it which made any claimed injury contingent on several possibilities and fairly speculative. Although the grace period in the Board's Order has elapsed, the Court finds that Plaintiff cannot escape the requirements of either appealing the Board's Order or proceeding with the filing of a new application as required by the Board's Order simply by prematurely filing a case in federal court.[5,6] Again, the City has

---

[5] To the extent New Life asserts that it should be exempt from the permitting process in its entirety, the Court finds this argument disingenuous. It is clear from the record that New Life allowed the City to inspect the Facility and, at the very least, applied for its original hotel permit. Also, while Congress, in passing RLUIPA, created heightened protection to religious institutions from government-imposed burdens, the purpose of the passage of RLUIPA was not to provide immunity to religious institutions from zoning ordinances or special protection from nuisance complaints. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005); 146 CONG. REC. 16,700 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy on the Religious Land Use and Institutionalized Persons Act of 2000) ("This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.").

[6] In two motions before the Court, the City and the Property Intervenors request the Court abstain from exercising jurisdiction over this action under the *Younger* abstention doctrine (Docs. 102, 109). In *Younger v. Harris*, 401 U.S. 37, 43-44 (1971), the Supreme Court directed federal courts to abstain from hearing cases where "the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges." *Harmon v. City of Kansas City, Missouri*, 197 F.3d 321, 325 (8th Cir. 1999). *See also Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir. 1996). The Court need not decide whether the Board's Order falls into one of the three exceptional circumstances outlined in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 588 (2013). The *Younger* case law is informative, however, because the Eighth Circuit is clear that in the case of a state administrative proceeding, in an area of important state interest, a party must exhaust the appellate process before it can seek relief in federal court. *See Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1145 (8th Cir. 1990). Further, "[c]ourts have consistently held that a party cannot avoid *Younger* by choosing not to pursue available state appellate remedies." *Id.* at 1144.

repeatedly indicated its willingness to review and process the current application.[7] Therefore, the Court finds that New Life would not suffer hardship as a result of this Court withholding consideration because the Court had determined that New Life has not suffered, and is not certain to suffer, an immediate injury.

Accordingly, the Court finds New Life's RLUIPA claims (Counts I, VIII) and its section 1983 claims (Counts II, III) not ripe for adjudication and will dismiss Counts I, II, III, and VIII without prejudice.

### E. The Remaining Claims

#### 1. Declaratory Judgment

In Count VII, Plaintiff seeks the following three declarations pursuant to 28 U.S.C. § 2201:

> (1) New Life is not required to have a hotel permit to operate a shelter that serves the homeless and allows members of the homeless population to stay overnight on New Life's property;
>
> (2) The City may not order New Life to cease operations solely on the basis that New Life's hotel permit has been revoked will allow New Life to continue to provide services to the homeless [sic]; and
>
> (3) The Board's order has no effect because New Life is not subject to Chapter 11.72.

(Doc. 97 at 25).

The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The requirement that a case or controversy exist under the Declaratory Judgment Act is "identical to Article III's

---

[7] The Court notes that today New Life moved to continue the trial date and filed a memorandum in support of its motion detailing all of its exchanges with the City in an effort to obtain a new permit which further supports the Court's conclusion that this action is not ripe for adjudication (Docs. 161, 162).

13

constitutional case or controversy requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The key is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). *See also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) ("[T]he presumption of available judicial review is subject to an implicit limitation: injunctive and declaratory judgment remedies . . . are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."). The Court has determined that the underlying RLUIPA and section 1983 claims are not ripe for adjudication and, while a declaratory judgment claim may stand alone, the Court is unable to determine the relative rights of the Parties while the application is still pending. Accordingly, the Court finds that until a final decision is made on the application, there is not a substantial controversy between the Parties to warrant the issuance of a declaratory judgment and will dismiss Count VII without prejudice.

### 2. State Law Claims

Because the Court finds that the RLUIPA claims (Counts I, VIII), the section 1983 claims (Counts II, III), and the declaratory judgment claim (Count VII) are not ripe for adjudication, the Court will decline to exercise jurisdiction over the state law claims and will dismiss Counts IV-VI without prejudice.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, because the Court finds that the RLUIPA claims (Counts I, VIII), the section 1983 claims (Counts II, III), and the declaratory judgment claim (Count VII) are not ripe for adjudication and the Court declines to exercise jurisdiction over the

state law claims (Counts IV-VI), this action is **DISMISSED without prejudice**. A separate order of dismissal will accompany this memorandum and order.

**IT IS FURTHER ORDERED** that all remaining pending motions are **DENIED, as Moot.**

Dated this 27th day of October, 2015.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE